Case No. 17-1150NL, Jackmar Foodservice Distribution Petitioner v. National Labor Relations Board Mr. Lynn for the petitioner, Ms. Collins for the respondent, and Ms. Sanchez for the intervener Good morning. Good morning. May it please the Court, I'm Paul Lynn from Errant Fox for Petitioner, Jackmar Foodservice Distribution. At the outset, I'd like to make one thing clear about what's at issue here. Jackmar is not, at this time, asking the Court to overturn the election results outright, but rather we are asking for the hearing that we should have received, except for the Labor Board having rushed to judgment and disposing of Jackmar's election objections. There's two other points that are important to be borne in mind when considering the issues here. First, this election involved a smaller employee unit, and in smaller units, any misconduct and then the resulting discussion and dissemination of what happens has a greater impact because there's a smaller number of employees involved. And second here, it's important to bear in mind that the election result here actually was very close. If there had been a shift of three votes the other way, there would have been a different result because there would have been a tie vote and the union would have lost. Now here, Jackmar made four objections that are at issue. Three of them had some relationship to each other because they involved different types of threats and coercion to employees. The first one, which is the major one, concerned whether employees were signing union cards to get the election voluntarily. You're using the plural there. Wasn't there just evidence of one employee who had the threat on signing? There was one employee that had a direct threat. Then, Your Honor, the second one, he in his affidavit had said under the circumstances he did not feel he gave it voluntarily. But you're correct. There was not an indication of a direct threat there. Both of those were pre-petition conduct? They were. You're correct. Which places a heightened burden on you, right? I don't believe it places a heightened burden. Well, you'd have to show that it was more egregious or more directly related to union conduct. Right? No. I believe the standard is the same. I have not seen anything in the case law that treated the pre-petition conduct to a higher burden. There is the issue about which the board has raised about whether it can be considered at all under the ideal electric rule, which I'd like to address that. Yeah, please do. I can do that now. Yeah. If the court would prefer. Yeah. Yeah. Now, the board here incorrectly argues essentially that ideal electric is a bright-line rule and that therefore nothing that happened before the union filed the election petition could be considered. It is, in fact, not a bright-line rule. The board has actually not applied it that way. And the thing I would point out, although several circuit courts have considered the ideal electric rule, this circuit, in fact, has not. There's only two cases that we located where there was some reference or cite to it almost in passing, but the court did not address the contours or whether it's a proper rule. Now, here, the board, as we pointed out in our briefs, has actually not applied this as a bright-line rule. They have actually looked where there were several cases where there was pre-petition conduct specifically involving the solicitation of union cards and considered that as something that could, in fact, overturn an election in those cases. One thing I would like to especially point out is that the chair of the NLRB did a dissent. This was a split decision. And he, on this issue about the threats and whether pre-petition conduct could be considered, I'm pointing out in his words, consistently, the board has looked beyond ideal electric and considered misconduct that involved solicitation of union cards. Now here, the... Did he cite any cases where they had looked at this sort of pre-petition conduct? I know he said that there was a history or a precedence on that. Yes. Did he exercise cases? He did. He cited all of them. The Lyons restaurant case, which is a big one, Gibson's Discount Center. Okay. Thank you. And also Royal Packing, Your Honor. And then the board's majority, it actually did not give a... There was actually not a reasoned explanation for their departure and not following those cases and instead applying a bright-line rule. All the board majority said is this case is clearly distinguishable from the situations, you know, in which we departed from ideal electric, but they did not explain why. And here, before this court, the board just says this doesn't fit the quote-unquote unusual circumstances, but then doesn't define really what those are. So this is a rule that, you know, as it's been implied, has some arbitrariness to it. And the board's even indicated in the Willis-Shaw frozen food case that we also cited too, that it believes it can consider any pre-petition conduct that affected the results and says that as long as doing so would basically protect the basic values of the act. So the board kind of applies a we-know-it-when-we-see-it standard, which is kind of vague and nebulous here. But really, I mean, all this court would really need to do is look at, as the chair had pointed out in his dissent, how the board had consistently gone beyond ideal electric when there had been alleged misconduct involving the solicitation of cards. The next issue I wanted to be sure to address is the question of agency, because this is also an important issue in this case, particularly with the employee who had threatened the probationary employee, you know, who told him he had basically two choices. He approached him three times, and the third time told him, okay, as I see it, you have two choices. You can either continue, you can either sign the union card, or you can refuse to do so, and I'll tell, you know, he identified their manager that you're not a good worker. He was going to tell Jesus. He was going to tell Jesus. Jesus. His name was Jesus. His first name was Jesus. Supervisor. Yes. He was their manager. So he signed it as a result. Now, the question is, would he be considered a union agent? And here the board, they erroneously, or abused its discretion, depending on what standard applies here, denied a hearing and actually said that there was no evidence in the board's view supporting agency, and that is incorrect. It really fails to look at the whole record and draw necessary inferences. What would you say is the evidence of agency? In that particular instance, Your Honor? Yeah. Yeah, there's a couple ways, a couple things. Because agency can be shown as actual agency. Tell me what the evidence is that you would rely on. There's some evidence of apparent agency, I think, when you look at things as a whole. Usually what most reasonable people, when someone is approaching them, especially multiple times, asking you to sign a union card, you would probably tend to view them as being an agent of the union in some way. Is that good enough, or do you have to show actual agency? That would be good enough. That would be apparent agency. And the cases do talk about if someone is viewed in the eyes of the employee as being a representative of the union, they can be considered an agent. And then there's also, which the board and this court has recognized, too, a status of special agency that could apply in some cases when someone is soliciting union cards here. And in this case, there's actually more evidence here. And this is something that was before the board, and the chair in his dissent did note this, that Jack Maher actually had not allowed access to any of the union representatives to his property. And that does raise at least a factual question in the chair's view that warranted a hearing to explore that further, because if someone was getting union cards, that's not usually something that someone generates on their own. It's not like leaflets. They usually got them from the union directly and were soliciting one of the union's knowledge and probably consent and authorization. And so if there's not the union having access, that further suggests that somehow if Jack Maher had an employee who was going around soliciting or engaging in these activities, that they were an agent. So this is an issue. There's a couple ways, as I mentioned, that someone could be considered an agent here. And this is something, again, that really warranted a hearing to flesh this out further. I wanted to reserve some time for rebuttals, so I think I will stop there. Thank you. May it please the Court. Good morning. Valerie Collins for the board. I want to start by emphasizing what the board did not do. The board absolutely did not require the company to prove objectionable conduct. What it did was it assumed the truth of what the company proffered in its proffered evidence and simply concluded that that failed to rise to the level of establishing a prima facie case of objectionable evidence. And I think that — The chairman thought it did, didn't he? I'm sorry? The chairman of the board thought it did. Yes. And cited some history as to where he says the board had in the past treated the evidence differently than what the majority is here. Is that not correct? Didn't he? I want to make sure I'm addressing your question. Are you talking about when Member Mismar is addressing Ideal Electric? Yes. And those exceptions? Yes. He did. So it was his opinion, not the majority, that this required a hearing. Did the majority deal with his proposition there? The majority's conclusion is that this case, in agreement with the RD, is nothing like the exceptions that have been established for Ideal Electric. Ideal Electric is a longstanding, judicially approved rule. Tell me what the board — what we find in the record that the board says about that. The board found that there's no exception that applies. So Ideal Electric applies. There was nothing about the circumstances — But they really did not discuss what the chairman raised in his dissent about the exceptions, did they? The board does not go — the dissent is certainly more lengthy than the majority decision. Also before the court is the decision of the RD, which that's what the board was agreeing with. The regional director does discuss why this case is nothing like Lyon's, which is the most applicable — if there was any exception that was going to apply, that's what it would be, because it involved a threat. And the language of that decision alone kind of emphasizes that this is extraordinary. It was highly unusual circumstances. All of the cases in which it established exceptions to Ideal Electric emphasize that there's something about the pre-petition behavior that really had the ability to carry on and to potentially taint the election. And so those circumstances are highly unusual. For example, the company in its reply brief mentions Willis, frozen foods. That was a case in which somebody was stabbed. So, of course, I mean, that's just — that's outrageous. And so, of course, people are going to remember that, you know, whether it's pre-petition or post-petition, and it had the impact to kind of taint the election. Here, what they're alleging is a threat from someone we don't know if he's an agent of the union at all. But I don't think we even need to go there, because Ideal Electric applies. But if there's not even — Assume for a moment you get over the agency. Take it on that assumption and tell me what were we doing there. Assume — I'm not sure I understand. Assume agency. Assume agency is applied. Assume agency. Okay. So even if going to agency — so the court would first have to conclude that Ideal Electric does not apply here, and then it would have to go through the agency analysis. And assuming that agency applies, it would apply the general test of whether the behavior had the tendency to coerce or impact employee free choice. And even — Isn't it a credible threat to cause his firing rise to that level of being something that would be coercive? The company's proffer does not raise anything that would suggest that that would impact the election. There wasn't even an allegation that anyone else knew about this. And so to kind of translate one threat from Carlos, whose last name is even mentioned, to Mr. Chavez, and saying that that was significant enough to throw an entire election and require a rerun election, that simply doesn't meet the standard. So even if you assume agency, they still were not able to proffer facts, proffer evidence that would establish a prima facie case of objectionable conduct if credited. So in the same way, even if — so if the court does conclude that Ideal Electric doesn't apply here, which I think it clearly does, and agency status is not established, which it is not, an alternative holding would be the board's holding that it failed to follow or failed to establish a Westwood factors, which is a third party standard for objectionable conduct. And that is — excuse me — that the conduct at issue was so aggravated to create a general atmosphere of fear and reprisal, rendering a free election impossible. And for the same reasons that the company failed to proffer facts to establish a party of objectionable conduct, obviously the third party standard is much more — is much higher, and it certainly was not — did not render an election impossible. I do want to just very briefly talk about the agency status, the small point on the facts that are in the record that would establish agency. And again, this is if the court rejects Ideal Electric. There really — there is nothing in the record that establishes agency here. And there is no case that holds that an employee giving a union authorization card alone, just that, establishes an agency status. For example, in the reply brief, in the Davlin case, the company cites Davlin for the position that union authorization card is enough. However, it leaves out some relatively significant language in that case. That case did not say that an authorization card itself is enough. An authorization card plus the person is making promises of a waiver of initiation fees. And that kind of goes — that's a huge detail, right? So it wasn't just the authorization card. Having an authorization card and saying, I have an authorization card, you want to see it and sign it, does not establish agency status. I see that my time is running short. Unless the court has any questions, we appreciate the opportunity for oral argument. Thank you. May it please the Court. Good morning, Your Honors. Renee Sanchez for the Intervenor Union. The union wholeheartedly agrees with the NLRB's presentation here this morning and would only add that the delay caused by the employer's refusal to recognize and bargain with the union has caused grave harm to employee free choice. The union was certified close to two years ago. The employees chose Local 630 as their exclusive bargaining representative. The vote was 15 yes, 9 no. And two years later, they are without the protections and benefits of a collective bargaining agreement. Your Honors, Jack Ma employees have waited almost two years to be vindicated. Their free choice has been — and the NLRB itself — have been frustrated. And the union respectfully requests that you enforce the board's order in all respects. Thank you. Thank you. Just a couple brief points. With respect to the cases that consider pre-petition conduct beyond, in other words, beyond Ideal Electric, the board has argued incorrectly that those don't apply because this case doesn't involve exactly the same facts. I mean, that's hair-splitting. It really ignores the general principle and the fact that, as the chair noted, the board has consistently considered pre-petition conduct when there was misconduct with union cards. And on the agency issue, as this court has recognized, ordinarily that is a fact-bound determination that does require a hearing. So that's why we believe we have made a sufficient showing here and have talked about the fact that's on our record that it warrants a hearing to flesh out these issues. And among them is the amount of dissemination of the threat that had happened. Because the employees do talk, this was a small unit. And, of course, the employer is very limited, has limited time and access to people to try to, you know, put its evidence before the board. That's why, as this court has recognized, too, usually in terms of on agency issues, you have to get information from the union. The only way to get that is through the discovery of the hearing process. And finally, on the delay issue, that's – Jack Maher did have the right to pursue this process and really has no control over how long the board takes on things, too. So unless the court has any questions, I'll submit. Thank you very much. Thank you. The case is submitted.
judges: Henderson, Griffith, Sentelle